**DAVID W. SANDELL, Petitioner,**

**v.**

**FEDERAL AVIATION ADMINISTRATION, Respondent.**

**Nos. 89–70078, 90–70239 and 981–2.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 1990.

Decided Dec. 28, 1990.

---

David Sandell, Seattle, Wash., pro se.

Sheila Hughes Rodriguez, F.A.A., Washington, D.C., for respondent.

Before GOODWIN, Chief Judge,
WRIGHT and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

David W. Sandell, a citizen of the State of Washington, appeals from determinations made by the Federal Aviation Administration (FAA) relative to certain airfields in the San Juan Islands. The case is a skirmish in a protracted conflict between Sandell, a user of one airfield, and neighbors who propose building a competing airfield.

## FACTS

In 1980 Sandell resurfaced, graded, straightened, and cleared the privately owned Stuart Island West Airport, also known as Paull's Field. In return, he was given an easement to use the strip and the

right to recover the costs of the improvement by collecting contributions from other users. At the time, no notice of Paull's Field had been filed with the FAA.

Ralph Ericksen Farms owns property not far from Paull's Field. On May 29, 1986, it filed a Notice of Landing Area Proposal (Form 7480–1) with the FAA, indicating it intended to build a field named Prevost Airfield.

The FAA conducted an air space study for the proposed Prevost Airfield. On December 8, 1986, the FAA granted an extension of the Prevost proposal through January of 1987; this extension was then further extended to January 31, 1988.

Paull's Field was ignored by the FAA in its study because no record of the airfield was in the FAA files. On February 2, 1988 Sandell filed a Notice of Landing Air Proposal in order to give the FAA notice of the existence of Paull's Field. The FAA made an air space review of Paull's Field and on December 28, 1988 issued a determination as to this field. The determination concluded that if the proposed Prevost Airfield became operational, Paull's Field would become objectionable unless certain safety measures were taken. On February 21, 1989, Sandell filed a petition with this court asking review of the FAA's determination.

Following a series of prebriefing conferences in this court, the FAA conducted a second air space review of Paull's Field and of the Prevost proposal. The FAA on December 13, 1989 issued revised determinations. New safety requirements were set out as to both airports in the event that Prevost Airfield became operational. On March 16, 1990, the FAA informed Sandell by letter that it would not modify the new determinations. On May 14, 1990 Sandell filed a petition for review of the revised determinations and the March 16, 1990 letter. His two petitions are consolidated in this appeal.

## ANALYSIS

■ *Jurisdiction.* Sandell and the FAA agree that the determination of December 28, 1988 is a final order of the FAA. We see no reason to disagree. Hence, the de-

termination is a reviewable order under 49 U.S.C.App. § 1486(a) (1988). Because the 1989 determinations override the 1988 determination and moot Sandell's appeal from the 1988 order, it is the 1989 determinations that are before this court. The March 16, 1990 notification, a mere letter, is not reviewable.

■ Sandell objects that at the time the FAA issued the 1989 determination, the FAA had no jurisdiction because this court had "exclusive jurisdiction" to set aside the 1988 order. 49 U.S.C.App. § 1486(d) (1988). We construe the FAA action as one taken by agreement of the parties with the consent of this court as part of this court's pretrial conference program. It was not in derogation of § 1486(d) for the FAA to make the second determination.

■ More difficult is whether Sandell has suffered any injury as a result of the 1989 determinations. In form, they merely offer advice as to safety rules that should be followed if Prevost Airfield is built and becomes operational. It is uncertain whether these events will occur. So far, Prevost Airfield has not been built. Sandell argues that the San Juan Planning Commission will take into account the FAA's advice and allow the building of Prevost Airfield to proceed. The practical effect, he argues, is permission for the building of an airfield which will interfere with the field he uses.

The contention is made that the case is not ripe for adjudication. To be sure, Sandell is not out of pocket at this point, nor is he prevented from using Paull's Field as he always has. And Prevost Airfield may never be built. It is argued that real injury to Sandell will occur only if that airfield is constructed with the present FAA determinations in effect.

On the other hand, Sandell cites the persuasive precedent of *Air Line Pilots' Assoc. Int'l v. Dept. of Trans,* 446 F.2d 236 (5th Cir.1971). There, a determination by the FAA that certain proposed high rise buildings in Dallas posed no hazard to navigation was contested by the Airline Pilots' Association, which had to concede that the

buildings might never be built. Nevertheless, the Fifth Circuit held that the pilots' appeal was ripe for review. If the FAA had ruled that the buildings would be a hazard, they could not have been financed or insured; the project would have been dead. Conversely, when the FAA ruled "no hazard," the practical effect was that "all the wind [was] taken out of [the opponent's] 'safety' argument." *Id.* at 241. The pilots' association was deprived of its most potent objection. The pilots, moreover, were objecting that the FAA had not followed its own rules. It would be foolish, the Fifth Circuit observed, to wait until the buildings were built and then hold that the FAA had not followed the proper procedure so that its determination was void. *Id.* at 242.

If the FAA had determined that Prevost Airfield could not be built because of its impact on Paull's Field, the proponents of Prevost Airfield would have had a case ready for review. Conversely, when the Prevost proposal was cleared, there was an impact on Sandell. The wind was taken out of his sails before the San Juan Planning Commission. Moreover, it would be foolish to postpone adjudication of his objections that the FAA did not follow proper procedure and take the objection up only after Prevost Airfield is built.

Ripeness is a doctrinal notion made up of policy considerations and the case or controversy requirement of Article III of the Constitution of the United States. *See* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532 (1984). When reviewing agency action, federal courts have required ripeness in order to keep from "entangling themselves in abstract disagreements over administrative policies" and "also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967) (Harlan, J.). Nothing is abstract about the determinations here under review, so the first reason to find the case unripe does not apply. Under the second prong of the *Abbott* test,

because the FAA conceded that the determinations are final orders, the decision was formalized. Sandell has felt their effects on his opposition to the airport before the San Juan Planning Commission. In terms of the reasons for the rule, the determinations are ripe for review.

That a contingency is involved is not fatal to ripeness. At times, as here, common sense indicates that review should be afforded even though the ultimate injury to the complaining party depends on the occurrence of further events. *Pacific Gas & Electric Co. v. State Energy Resources Conserv. & Devel. Comm'n*, 461 U.S. 190, 200–03, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983) (utility need not spend millions to proceed to point of formal application for a license before challenging moratorium on nuclear plants); *Santa Monica Airport Ass'n v. City of Santa Monica*, 659 F.2d 100, 104 n. 6 (9th Cir.1981) (Goodwin, J.) (although form of noise ordinance was not fixed, preemption doctrine would be applied whatever ordinance was adopted). Accordingly, we hold that jurisdiction exists and the determinations are ripe for review.

■ *Prevost Airfield.* We uphold the December 13, 1989 determination letter regarding Prevost Airfield. The FAA had jurisdiction to make a determination for the proposed airfield, followed appropriate procedures and had substantial evidence to conclude that the proposal would not be objectionable as long as certain safety precautions were taken.

Sandell argues that the FAA did not adequately take into account the existence of Paull's Field when it made its determinations with regard to the Prevost proposal. That was the case in the FAA's 1986 study, but the 1988 in-flight study of Paull's Field was incorporated in the 1988 determination. A second air space review that included Paull's Field was also part of the 1989 determinations. These studies were adequate to provide the FAA with the geographic, topographic and logistic information necessary to support its conclusions.

Sandell's main objection to the determination is that aircraft in certain traffic

patterns will not be able to see aircraft on the ground at Paull's Field or the proposed location of the Prevost Airfield until they are committed to land. He states that radio communication will not be available between such aircraft because of intervening topography. The record indicates that the FAA considered both the proximity of the two airstrips and the topography when it reached its conclusions. There is no evidence that the FAA did not consider any relevant factor or that its determination is not reasonable.

Sandell also argues that the determination is improper because the FAA did not consider the "efficient" use of airspace as required by Part 157. He argues that it is an abuse of discretion to find that a proposed new airport is not objectionable where it creates a safety hazard to an active airport that the users of the proposed strip could use. Where the FAA has reason to believe that two airstrips can coexist safely, it is reasonable to find it unobjectionable to build the new strip. One does not have a right to monopolize the navigable airspace if other people can safely use it.

 *Paull's Field.* We vacate the December 13, 1989 determination addressed to Paull's Field. 14 C.F.R. 157.3 (1990) requires that notice be given by any person who intends, among other things, to: "(a) Construct or otherwise establish a new airport or activate an airport. (b) Construct, realign, alter, or activate any runway, landing strip, or associated taxiway. (c) Deactivate, discontinue using, or abandon an airport, runway, landing strip, or associated taxiway for a period of one year or more."

The FAA maintains that it was acting within its authority in applying this section to Paull's Field. However, there was no indication that Sandell "intended" to do any of the things which would trigger a Part 157 determination. Sandell made it evident on his form 7801 that he only wanted to assure that his existing airfield was listed in the FAA files. The FAA did not have authority to make a Part 157 determination simply because an airport which was not on file wanted to be so. Nor did the FAA find

any facts sufficient to sustain its claim (made for the first time in its letter of March 16, 1990) that earlier events had subjected Paull's Field to Part 157.

The 1989 determination as to Prevost Airfield is AFFIRMED; the 1989 determination as to Paull's Field is VACATED.